Nelson, J.,
delivered the opinion of the court.
Williford and A. J. Dodson were partners in the mercantile and produce business at Riceville. Williford Dodson died in June, 1858, and A. J. Dodson was qualified as his executor at the July Sessions, 1858, of the County Court of McMinn, and made a settlement with the clerk of said court, which was duly approved by the court, and ordered to be spread of record on the 5th of November, 1860. When this bill for an account was filed on the 7th of January, 1867, the record of the settlement was lost or mislaid, but was afterwards found. The amount of assets charged in the settlement was $17,831.27,- and the balance charged to the executor, after allowing sundry credits, was $361.99. The correctness of the settlement was sworn to by the executor before the clerk; and in his answer to the original bill in this case, he stated that the aggregate amount of assets returned was a just, true, and perfect account, but that, owing to the loss of his books, he could not give a correct account of disbursements otherwise than by showing the amount of notes and accounts on hand. - After entering into various details, he stated in said answer that he had paid out, or individually assumed, $2,304.32 of the indebtedness of the firm more than he had received, and denied that there were any assets in his hands belonging to the firm or the • estate other than certain notes and accounts. In his amended answer and cross bill, he states that *112 the settlement and a large portion of the vouchers had been found after the filing of his former answer, and seeks to impeach the settlement, because he says he was erroneously charged with all the debts, good, bad, and doubtful, and with certain railroad stock, and states an account in which he claims a balance of $2,461.51, less the widow’s legacy, and seeks to subject the real estate which descended from his testator to its satisfaction.
The evidence in the cause is voluminous, and numerous inquiries were submitted to the Master, 'whose report was excepted to by both parties, but the exceptions were overruled by the Chancellor, and a decree pronounced against the executor and his securities for $625.40 and costs, from which the executor prosecutes this appeal. These exceptions have been carefully examined, but it is not necessary in this opinion to notice them in detail. Some of the exceptions on both sides fail to make special reference to the names of witnesses, the pages of documents relied upon, and are defective in other particulars required to be specified by this court in opinions delivered at its last terms in Nashville and Jackson.
After a diligent examination of the entire record, we are satisfied that the practice would be dangerous to allow an executor, after having made a settlement under oath, and affirmed its correctness in an answer upon oath, to have it reviewed and corrected, at least without allegations in his bill, and proofs to sustain them, minutely and particularly specifying the .various erroneous items. In this case, the executor alleges, in *113 his answer and cross-bill, that he charged himself in the settlement with the County Court Clerk, or was therein charged, with the gross amount of debts due and owing to the firm, and that many of these debts were not, in fact, collected at the time of the settlement, and were lost by the subsequent insolvency, of the debtors. But he does not exhibit any schedule or statement showing the items composing the gross amount of $17,831.27, with which he charged himself in the settlement, so as to enable complainant to contest the correctness of his statements. In his first answer, he exhibits a schedule of debts paid out by him for the firm, amounting to $15,734.18, which probably embraces the sum of $15,675.35 allowed him in the settlement with the County Court Clerk; and furnishes a statement of judgments in favor of the firm amounting to $1,240.79. In his amended answer, he exhibits a schedule of debts paid for the firm, the vouchers for which, he says, have been lost and mislaid to the amount of $381.91, and a statement of firm debts, which, as he states, were assumed by him to the amount of $2,302.23. There • is also in the transcript what purports to be an inventory of the assets of the firm, containing a detailed statement of the notes and accounts, and an aggregate statement as to the amount of merchandise on hand, which, added together, make the gross sum of $17,831.07; but the items contained in this inventory are not put in issue by the pleadings so as to enable either party to surcharge and falsify the account.
It may be observed that the executor, adióse depo *114 sition was taken 17th of May, 1869 (before the act which went into effect 16th of December, 1868, was amended by the Act of 24th of February, 1870), and was therefore a competent witness, expressly testifies upon cross examination that he did not report any bad or doubtful debts when he made the settlement with the clerk, although he says he had previously reported some bad debts in the “invoice” delivered to the clerk.
It appears that all the assets of "Williford Dodson's estate consisted of his share of the partnership debts and effects, and were in the hands of the executor as surviving partner; and we hold that, as he charged himself with them in the settlement of 5th of November, 1860, when all the transactions were fresh in his recollection, he can not be exonerated by the matters set up in his answer of 1st of February, 1867, and his amended answer and cross bill filed 11th of July, 1867, more than six years after his solemn settlement, and especially when the results sought to be reached in the two answers are so different. Making due .allowance for, the confusion produced by the intermediate civil war, and not unmindful of the suspension of the statute of limitations, we do not hold that either the lapse of time or the statute bars the relief sought, but that, as the executor had two years within which to ascertain the condition of the estate, and made a settlement which the statute declares to be prima facie evidence, he is es-topped to deny its correctness in view of these circumstances, and ought not to be discharged from the *115 effect of bis solemn admissions, except upon tin; clearest and most satisfactory evidence that it was not his intention as surviving partner to take the assets of the firm and to become liable as executor for the share belonging to his testator’s estate. There is no such evidence in the record; but, on the contrary, it is shown by the evidence of several witnesses that the executor, after having charged himself with the partnership assets, treated them as his own, and even within the course of a year after the death of the testator, expressed the opinion that his shan; of the profits would amount to a much larger sum than that accounted for; and two witnesses, as to whose credibility there is much contradictory proof, testify that he said he had invested it in the purchase of a farm near Riceville.
In view of these and various other facts in the record, a recital of which would unnecessarily prolong this opinion, we hold that the executor is bound by the settlement made on the 30th October, 1860, and confirmed by the County Court on the 5th November ensuing, and from which it appears that there .was then a balance in his hands of $361.69; but that he is not entitled to the allowance of $891.56, credited in that settlement, and should be charged with these two sums, amounting in the aggregate to $1,253.25, with interest thereon from the 30th October, 1860. Aside from the force and effect of the settlement, it is an established rule in chancery practice that a party charging himself in a schedule to his answer, can not dicharge himself by another schedule to the same an- *116 swter stating his disbursements: 2 Perkins’ Dan. Ch. Pr., 1426-1431. We, therefore, hold the executor to account for the balance in his hands, on the ground that the charge against him in the settlement was properly -made, but he was improperly credited with the- said sum of $891.56. No allowance is made to the executor for his services, because the entire fund, was in his hands as surviving partner, and as such he was entitled to no compensation for his trouble or services in settling up the business, according to Piper v. Smith, 1 Head, 94, 95. He made no disbursements except the payment of a legacy to the widow, and should be allowed no compensation for the additional reason that his accounts are unsatisfactory, that his answers are in conflict with each other, and that there is much evidence in the record tending to show, but not clearly establishing, that he should be charged with a much ' larger amount.
Let a decree be pronounced against the executor and his securities in the appeal bond for the sum of $625.40, and interest thereon from the 22d December, 1869, the date of the Chancellor’s decree, and for all the costs of the original and cross bills in this court and the court below, and against the executor personally for the amount for which he is held liable over and above the amount of the Chancellor’s decree.